## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEFFREY SOBHANI,

     Plaintiff,

     v.

RELIANCE STANDARD LIFE INSURANCE CO.,

     Defendant.

No. 3:13-cv-00728 (MPS)

## MEMORANDUM OF DECISION

Plaintiff Jeffrey Sobhani ("Plaintiff") brings this action under § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), against Defendant Reliance Standard Life Insurance Co. ("Defendant"), arising out of its denial of Plaintiff's claim for partial disability benefits under his former employer's benefit plan (the "Plan"). Defendant has moved for summary judgment on the ground that the denial was reasonable. Because this Court's review is limited to an abuse of discretion standard and the Court does not find that Defendant's denial of Plaintiff's benefits was manifestly unreasonable, Defendant's Motion for Summary Judgment [Dkt. #41] is GRANTED.

### Background

The material facts are not in dispute. Plaintiff, a fifty-year-old aircraft engineer, suffers from a condition called chronic prostatitis/chronic pelvic pain syndrome and the related conditions of paradoxical puborectalis syndrome and pudendal nerve neuralgia. (Pl.'s L.R. 56(a)(2) Stmt. ¶ 8; Pl.'s Aff. ¶¶ 4, 5.) These conditions prevent Plaintiff from sitting for prolonged periods and require specialized medical treatment. (Pl.'s Aff. ¶ 4.) Plaintiff worked for Butler America, Inc. ("Butler America") as an Engine Performance Engineer subcontracted

to Sikorsky Aircraft Corp. between July 1, 2009 and August 20, 2010.  (Pl.'s L.R. 56(a)(2) Stmt. ¶ 20; Pl.'s Aff. ¶ 15.)

At Butler America, Plaintiff's condition was relatively stable until early July 2010, (Pl.'s Aff. ¶ 13), at which time he began an application for partial disability benefits with Defendant, which funded and administered Butler America's employee benefit plan.  (Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 1, 11.)

Plaintiff was laid off from Butler America on August 20, 2010, one month short of the expiration of his contract.  (Pl.'s L.R. 56(a)(2) Stmt. ¶ 14.)  An August 13, 2010 email included in the Administrative Record explains the reason for Plaintiff's departure:

> Due to delays in receipt of the Engine Deck for the taller impeller engine, and the fact that there has been a minimal need for performance runs required, Jeff's last day will be August 20.  His current contract was due to expire [at the] end of September.  This will be a departure 1 month earlier than planned.
>
> His work here has been appreciated and we wish him well.

(Pl.'s L.R. 56(a)(2) Stmt. ¶ 14; A.R. 333.)  There is no dispute that Plaintiff's termination was due to a lack of work at Butler.  (*See* Pl.'s L.R. 56(a)(2) Stmt. ¶ 14.)

Defendant notified Plaintiff that it was denying his claim for benefits by a letter dated January 14, 2011.  (A.R. 31.)  Plaintiff appealed the denial and Defendant upheld it by a letter dated June 23, 2011.  (A.R. 42.)  Plaintiff filed suit in this court on May 20, 2013, alleging that Defendant's denial of his claim was unreasonable and constituted a breach of its fiduciary duty as the administrator of the Plan.

## Legal Standard

"Summary judgment is appropriate where there is no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  The moving party is entitled to

judgment as a matter of law where the nonmoving party has failed to make a sufficient showing on an essential element of his case for which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has the burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting Fed. R. Civ. P. 56). When determining whether there is a genuine issue of material fact, the court interprets all ambiguities and draws all inferences in favor of the nonmoving party. *Salahuddin*, 467 F.3d at 272.

### ERISA Standard of Review

The Supreme Court has laid out four guiding principles for deciding appeals of benefits denials under § 1132(a)(1)(B):

> (1) . . . a court should be guided by principles of trust law; in doing so, it should analogize a plan administrator of a common-law trust; and it should consider a benefit determination to be a fiduciary act . . . .; (2) Principles of trust law require courts to review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary, (3) Where the plan provides to the contrary by granting the administrator or fiduciary *discretionary authority* to determine eligibility for benefits, . . . [t]rust principles make a *deferential standard* of review appropriate, and (4) If a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a factor in determining whether* there is an abuse of discretion.

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (internal quotation marks and citing references omitted) (emphasis in original).

Here, the parties dispute whether the Court should apply a *de novo* standard of review or a deferential standard to Defendant's denial of Plaintiff's claim for benefits. More specifically, Defendant submits that the Court may overturn its decision as the administrator of the ERISA-regulated benefit plan only if the decision is found to be arbitrary and capricious. (Def.'s Br. [Dkt. #42] at 3.) Plaintiff disagrees, arguing that the Court's review should be *de novo* because

the Plan document does not include a clear grant of discretion to Defendant to interpret and decide claims for benefits.  (Pl.'s Br. [Dkt. #49-1] at 5.)  The Court concludes that the abuse of discretion standard is proper.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court, applying "established principles of trust law," held that a court is to review a denial of benefits under an ERISA-regulated plan *de novo* unless the plan document gives the plan's administrator or fiduciary the discretion to interpret the terms of the plan and determine claimants' eligibility for benefits.  489 U.S. at 115 (emphasis added).  Where the plan gives the administrator such discretion, the administrator's decisions are to be reviewed under an abuse of discretion standard. *Id.*

In determining the proper standard of review, the Court must decide whether the Plan grants discretionary authority to Defendant to determine claimants' eligibility for benefits.  The Plan's "Claims Provisions" section contains the following paragraph:

> Reliance Standard Life Insurance Company shall serve as the claims authority fiduciary with respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.  Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(A.R. 16.) The Second Circuit and this Court have found similar language in other plans to require application of the deferential standard urged by Defendant.  *See, e.g., Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation marks omitted) (holding that a provision that a pension committee "shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan and any decisions of such Committee shall not be subject to further review," was sufficient to grant the committee complete discretion); *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1254 (2d Cir. 1996) (internal

4

quotation marks omitted) (provision that "[t]he administration of the Plan, the exclusive power to interpret it, and the responsibility for carrying out its provisions are vested in the Committee," was sufficient to justify application of an abuse of discretion standard), *abrogated on other grounds by McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008); *Barber v. Sun Life & Health Ins. Co.*, 894 F. Supp. 2d 174, 181-82 (D. Conn. 2012) (internal quotation marks omitted) (plan providing administrator with "discretionary authority to make claim, eligibility, and other administrative determinations regarding those policies, and to interpret the meaning of their terms and language" "unequivocally confers discretionary authority").   The Court concludes that the above-quoted language from the Plan grants express authority to Defendant to determine eligibility for benefits.[1]  The abuse of discretion standard is therefore appropriate.  *See Glenn*, 554 U.S. at 111.

Proceeding to the third step of the analysis, the Court must decide whether Defendant's denial of Plaintiff's claim for disability benefits was an abuse of its discretion under the Plan – in other words, whether the denial was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *See Pagan*, 52 F.3d at 442 (quotations omitted).  The Court "is not free to substitute [its] own judgment for that of [the insurer]," *id.*, and its review is limited to the administrative record, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).

---

[1] Plaintiff relies on *Jobe v. Med. Life Ins. Co.*, 598 F.3d 478, 486 (8th Cir. 2010), which held that discretionary authority may not be conferred in an SPD (summary plan description) when the SPD conflicts with the language in the insurance policy that provides coverage for benefits under ERISA.  In *Jobe*, the SPD referred collectively to a certificate of coverage and an ERISA Information Statement.  *Id.* at 480.  In this case, however, Plaintiff fails to point to any SPD or, for that matter, any Plan document other than the insurance policy that insures Plaintiff's former employer.  The language granting discretionary authority is found in that policy.  Insurance policies may be "plan documents."  *See, e.g., Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 573 (2d Cir. 2006) ("The terms of the Plan are expressed in two documents: the Summary Plan Description . . . and [Defendant's] Group Long-Term Disability Policy (the 'Policy')."); *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 335 (E.D.N.Y. 2013) ("[Defendant] has produced the relevant Plan Documents – the Booklet-certificate [comprised of the certificate of insurance that is part of the Group Insurance Policy] and the 2004 Policy Amendment – which when read together, establish [Defendant's] explicit discretionary authority to enforce and interpret the terms of the Plan."); *Gonzales v. Unum Life Ins. Co. of Am.*, 861 F. Supp. 2d 1099, 1109 (S.D. Cal. 2012) ("[Defendant] has met its burden to show that a plan document – the insurance policy – unambiguously delegates the discretion to determine whether an employee is eligible for long-term disability benefits.").

"Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000) (citation omitted), *abrogated on other grounds by McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008).

## DISCUSSION

The issue is whether Defendant's conclusion that Plaintiff was not entitled to benefits under the terms of the Plan was unreasonable, not, as Plaintiff argues, whether genuine issues of material fact exist as to whether Plaintiff actually was disabled. (Pl.'s Br. [Dkt. #49-1] at 5, 7). Defendant argues that it is entitled to summary judgment that the denial of Plaintiff's claim was reasonable. The Court agrees.

## Plan Terms

The Plan promises to "pay a Monthly Benefit if an Insured: (1) is Totally Disabled as the result of a Sickness or Injury covered by the Policy; (2) is under the regular care of a Physician; (3) has completed the [180-day] Elimination Period; and (4) submits satisfactory proof of Total Disability to us." (A.R. 7 ("Elimination Period"), 20 ("Benefit Provisions").) The Plan provides that an Insured is Totally Disabled if, as a result of an Injury or Sickness:

(1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
   a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
   b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Totally Disability; and

> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

(A.R. 10.)   The Plan defines "Full-time" as working "for a minimum of 30 hours during a person's regular work week."  (A.R. 9.)  If a claimant returns to work full-time for less than 30 days during the Elimination Period, such time does not count toward the Elimination Period.  (*Id.* ("Interruption Period").)

### Administrative Record

The Administrative Record before the Court is a 508-page file containing, in relevant part, Plaintiff's claim for benefits, a vocational specialist's classification of Plaintiff's job duties, correspondence between Plaintiff and Defendant, a case report prepared by independent medical expert Dr. Edward D. Kim, printouts from Defendant's claims database, correspondence from Defendant to Plaintiff's physicians requesting medical records, medical records from various providers, and Plaintiff's time cards between the filing of his benefits claim and his termination.

The vocational specialist classified Plaintiff's job at Butler America as either "Aeronautical Project Engineer" or "Aeronautical Test Engineer;" the requirements of both included "[r]eview[ing] and evaluat[ing] product request from customer[] and formulat[ing] conceptual design to meet customer requirements," "[a]nalyz[ing] project proposal . . . and discuss[ing] proposal with customer representatives, engineers, and other personnel," "[a]ssign[ing] project personnel to specific aspects or phases of project," and "[c]onsult[ing] with project personnel and others to provide technical assistance and information."   (A.R. 170.) According to the vocational specialist's report, Plaintiff's job required "[l]ifting, [c]arrying, [p]ushing, [p]ulling 20 [l]bs. occasionally, frequently up to 10 [l]bs., or negligible amount

7

constantly[,] [c]an include walking and or standing frequently even though weight is negligible[,] and [c]an include pushing and or pulling of arm and or leg controls." (*Id.* 171.) The portion of Plaintiff's claim form that was prepared by a Senior Technical Recruiter at Butler indicates that Plaintiff was required to sit for seven out of eight hours each workday and walk for one hour. (A.R. 54.)

A report by Dr. Kim, a board-certified urologist ("Kim Report"), prepared at Defendant's direction, indicates that Dr. Kim reviewed records from Plaintiff's medical visits to various medical providers including internists, a urologist, a gastroenterologist, a neurologist and physical therapists between May 2008 and October 2010. (A.R. 63.) He also reviewed Defendant's referral form, Plaintiff's claim report, correspondence from both Plaintiff and Defendant, and various test results. (A.R. 64-65.) The Kim Report is dated June 14, 2011. (*See* A.R. 67.)

The report refers to a letter from nurse-practitioner Pat Meade-D'Alisera, dated May 23, 2009, which notes that Plaintiff is "unable to sit for long periods" and suggests that Plaintiff reduce the hours "[that] he is physically in the office to no more than 6 hours daily or possibly working one to two days from home as this will reduce the time he is sitting as well as afford time to attend therapies that are beneficial in reducing his symptoms." (A.R. 63, 414.)

The report also notes that Dr. Kim reviewed medical reports from Plaintiff's primary care doctor, Dr. Judith Kleinstein, and the portion of Plaintiff's benefits claim form that she completed. (A.R. 63-64.) Dr. Kleinstein indicated on the claim form that Plaintiff had a "Class 3" physical impairment – which the form defines as a "[s]light limitation of functional capacity; capable of light work" – followed by a handwritten note in the Remarks section, reading "pt able to work limited hours." (A.R. 56.) The form does not specify exactly how Plaintiff's work

hours were limited, (*see id.*), nor does Dr. Kleinstein's July 2, 2010 report (*see* A.R. 199).  While

the report includes a handwritten note reading "wants to cut back to 30-32 hr wk. b/c fatigue,"

(A.R. 199), the parties agree that this note reflects only a request by Plaintiff to work thirty to

thirty-two hours per week (Pl.'s L.R. 56(a)(2) Stmt. ¶ 13), and is not a recommendation by Dr.

Kleinstein or her staff.   The Court has not found any documentation in the Administrative

Record from Dr. Kleinstein or any other provider specifying that Plaintiff should work less than

30 hours per week.

> The Kim Report concludes as follows:
>
> The claimant can sit, stand, walk, bend at waist, squat at knees, climb stairs, climb
> ladders, kneel, crawl, and drive frequently.  The claimant can push and pull with
> the right and left upper extremity frequently.  The claimant can lift exerting up to
> 20 pounds of force occasionally, and/or 10 pounds of force frequently and/or a
> negligible amount of force constantly.  The claimant can use foot controls
> continuously.  The claimant can simple grasp, reach above mid chest, reach at
> waist/desk level, fine manipulate and feel with the right and left upper extremity
> continuously.

(A.R. 65-66.)  The Kim Report further notes that after Plaintiff filed his disability claim, "there

were no significant changes in the claimant's condition that would impact his work abilities."

(A.R. 66.)

The Court has also reviewed Plaintiff's time cards from his employment at Butler

America between the filing of his claim and his termination, which are included in the

Administrative Record.   The time cards show that in the week ending July 4, 2010, when

Plaintiff filed for disability benefits, he worked 32 hours.  (A.R. 245.)  The number of hours

worked for the subsequent weeks were 23, 34, 33, 37, 34.5 39.5, and 35 hours, ending August

20th.  (A.R. 245-52.)  In the week ending July 11, 2010, Plaintiff worked only three days, but for

six of the eight weeks for which there are time cards, Plaintiff worked every weekday.  (*Id.*)

**Denial Letter**

Defendant notified Plaintiff of the denial of his claim by a five-page letter dated January 14, 2011 ("Denial Letter").  (A.R. 31.)  In sum, the letter explains the denial on the grounds that "you are not Totally Disabled, as a result of Sickness or Injury, nor do we have evidence that you satisfied the Elimination Period."  (A.R. 34.)  The Denial Letter quotes at length the Plan's qualifications for disability benefits, discusses Defendant's review of Plaintiff's available time cards, and describes the medical treatment Plaintiff received for his condition from various providers both before and during his employment at Butler America.  (A.R. 31-33.)  The letter notes that the vocational specialist who reviewed Plaintiff's file determined that Plaintiff retained the ability to perform the material duties of his occupation as an engineer, which the parties agree is categorized as "light" (Pl.'s L.R. 56(a)(2) Stmt. ¶ 10).  (A.R. 33.)

The Denial Letter notes that the time sheets Defendant reviewed show that Plaintiff worked an inconsistent amount of hours per week at Butler America, but mostly was able to work full-time (defined in the Plan as 30 hours per week).  (A.R. 32.)  The Denial Letter also notes that because Plaintiff had received treatment for his "long-standing" conditions "in the past, we are unable to determine how your medical condition has changed that would affect your ability to perform your full-time occupation."  (A.R. 33.)

**Appeal Letter**

Defendant's letter in response to Plaintiff's appeal of the denial ("Appeal Letter") restates the conclusions of the Denial Letter in more detail.  The Appeal Letter notes that Plaintiff declined to authorize the release of prior claim records from the disability carrier at his former employer, which, the letter points out, "would have assisted us in our review and may well have been beneficial to you in the overall assessment."  (A.R. 46.)  These prior claim records are not

before the Court.  The Appeal Letter explains that "[w]e are not suggesting that you do not have restrictions and limitations, however based on our review and as supported by the peer review by Dr. Kim, they do not rise to the level of impairment that would render you Totally Disabled or Partially Disabled (throughout the 180-day Elimination Period or beyond) . . . ."  (A.R. 49.)

### Review of Defendant's Denial

Plaintiff argues that Defendant "misapplied the substantive facts" and that he was, in fact, "Totally Disabled."  (Pl.'s Br. [Dkt. #49-1] at 1.)  Plaintiff's first argument that the denial was unreasonable rests upon his unsupported assertion that he was "Totally Disabled" because of his medical conditions.  (Pl.'s Br. [Dkt. #49-1] at 10.)  This is insufficient to sustain Plaintiff's burden to show that he was disabled, as required by the Plan.  (A.R. 20 (to obtain Monthly Benefit, Insured must "submit[] satisfactory proof of Total Disability to us"); *see also Pease v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 441 (2d Cir. 2006) (Plaintiff "has the burden of proving by a preponderance of the evidence that he is totally disabled within the meaning of the plan." (internal quotation marks omitted)).

Pointing to the fact that "Sikorsky requires 40 hour weeks for direct employment," Plaintiff argues that "[d]espite the Defendant Plan's definition of a full time position being 30 hours per week[,] this doesn't mean that a full time job in his occupation has a standard 30 hour work week."  (*See* Pl.'s Br. [Dkt. #49-1] at 6, 12.)  The Court understands Plaintiff as arguing that he met the definition of Total Disability because another employer would not hire him at all unless he could work a 40-hour week, which he is unable to do.  This argument is misguided, because the Plan is concerned with an Insured's inability to perform the material duties of a "Regular Occupation," which is defined as follows: "'Regular Occupation' means the occupation the Insured is routinely performing when Total Disability begins.  We will look at the Insured's

occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." (A.R. 10.) Plan benefits are not conveyed, therefore, based on the inability to perform the duties of a specific job with a specific employer. Plaintiff fails to point to any evidence in the Administrative Record that, as it is routinely performed in the national economy, his occupation must be performed at a minimum of 40 hours per week in order for the employee to be considered full-time.

In any event, Plaintiff does not point to any medical opinions or other evidence other than his own affidavit, (Pl.'s Aff. ¶ 15), showing that he could not, or cannot, work 40 hours per week. Since the Affidavit is not part of the Administrative Record, the Court may not consider it when evaluating Plaintiff's disability status. *Miller*, 72 F.3d at 1071; *see also Bergquist v. Aetna U.S. Healthcare*, 289 F. Supp. 2d 400, 411 (S.D.N.Y. 2003) ("Dr. Cameron's October 9, 2003 affidavit was NOT part of the administrative record, either originally or on remand – it could not have been, since it was executed after the administrative decision was made – and it is not appropriate for the Court to consider evidence outside the record material. I am not considering it.").

Next, Plaintiff argues that he should have been considered "Totally Disabled" under the Plan because he intermittently was able to perform all of his material duties on a part-time basis and some of his material duties on a full-time basis. (*See* Pl.'s Br. [Dkt. #49-1] at 13.) But the Plaintiff's time cards do not support this argument. During the week Plaintiff filed for disability benefits, and the weeks following, he worked more than 30 hours per week for all but one week, and as many as 39.5 hours another week. (A.R. 245-52.) As noted, "Full-time" under the Plan was 30 hours or more per week (A.R. 9), and Plaintiff has not presented any evidence that he could not perform all of his material duties during that time. In addition, Nurse Practitioner

Meade-D'Alisera, the only medical provider who specifically recommended a certain number of work hours per week, suggested that Plaintiff should work no more than six hours per day or 30 hours per week, which qualifies as full-time employment under the Plan.  (A.R. 9, 414.)

The Court also credits Dr. Kim's finding that "there were no significant changes in [Plaintiff's] condition that would impact his work abilities."  (A.R. 66.)  In other words, there is no medical documentation to support the notion that Plaintiff's status changed in July 2010, when he filed his claim, from the capacity to work full-time to the capacity to work only part-time.

Since Plaintiff was able to work full-time, he could not be considered Partially Disabled, and therefore not Totally Disabled, under the Plan.  *See Carroll v. Hartford Life & Acc. Ins. Co.*, 937 F. Supp. 2d 247, 268 (D. Conn. 2013) (where plaintiff's physician did not restrict plaintiff's "work hours to *only* twenty per week" and where plaintiff "was able to work full-time during the Elimination Period, and therefore could not prove that she was disabled *throughout* the Elimination Period," the insurer's denial was not arbitrary and capricious (emphasis in original)).

Given Defendant's thorough and fact-intensive review of Plaintiff's claim and appeal, the Court concludes that Defendant's determination that Plaintiff was not Totally Disabled under the Plan, and therefore was ineligible for disability benefits, was reasonable.  The Court cannot conclude from its own review of the Administrative Record that Defendant's denial of Plaintiff's claim was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Pagan*, 52 F.3d at 442 (quotations omitted).  As such, Plaintiff's claim that Defendant's denial of his claim constituted a breach of its fiduciary duty is meritless.

Plaintiff alleges, but does not argue in his brief, that Defendant is operating under a conflict of interest.  (Compl. ¶ 39; *see* Pl.'s Br. [Dkt. #49-1].)  The Supreme Court held in *Glenn*

that a conflict exists where an insurer is also the administrator of an ERISA-regulated plan, 554 U.S. at 114-15, and the fourth factor in the *Glenn* analysis requires the Court to take that fact into account in determining whether there was an abuse of discretion. *Id.* at 111, 114-15. The fact that Defendant is both the insurer and the administrator does not change the Court's conclusion that the denial was not arbitrary or capricious. As noted above, the denial and Appeal Letters reflect a thorough review of the evidence in the Administrative Record and articulate reasonable bases for denying Plaintiff's claim. The Court is unaware of any basis to conclude that the denial was motivated by conflicting interests. Further, as the conflict of interest was not raised in Plaintiff's brief, any such argument was abandoned.

## CONCLUSION

Defendant's Motion for Summary Judgment [Dkt. #49] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            August 15, 2014

14