14-3430-cv
Sobhani v. Reliance Standard Life Ins. Co.



UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of December, two thousand fifteen.

PRESENT:   JOSÉ A. CABRANES,
           BARRINGTON D. PARKER,
           RAYMOND J. LOHIER, JR.,
                   *Circuit Judges.*

---

JEFFREY SOBHANI,

      *Plaintiff-Appellant,*      14-3430-cv

      v.

RELIANCE STANDARD LIFE INSURANCE CO.,

      *Defendant-Appellee.*\*

---

**FOR PLAINTIFF-APPELLANT:**   Phillip G. Steck, Cooper Erving & Savage LLP, Albany, NY.

**FOR DEFENDANT-APPELLEE:**   Joshua Bachrach, Wilson Elser Moskowitz Edelman & Dicker LLP, Philadelphia, PA.

---

\* The Clerk of Court is directed to amend the caption as set forth above.

1

MANDATE

MANDATE ISSUED ON 02/01/2016

Appeal from a judgment of the United States District Court for the District of Connecticut (Michael P. Shea, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff-appellant Jeffrey Sobhani appeals the District Court's August 15, 2014 order entering summary judgment in favor of defendant-appellee Reliance Standard Life Insurance Co. ("Reliance") in his action for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"According to principles of trust law, a benefit determination is a fiduciary act, and courts must review *de novo* a denial of plan benefits unless the plan provides to the contrary." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008). When, as in this case, "written plan documents confer upon a plan administrator the discretionary authority to determine eligibility," *de novo* review does not apply; rather, "we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009) (internal quotation marks omitted). "[A] plan under which an administrator both evaluates and pays benefits claims creates . . . [a] conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." *McCauley*, 551 F.3d at 133. Applying these principles to Sobhani's claims of error, we affirm.

Sobhani's first argument focuses not on the administrative denial of his claim for disability benefits but on the record that was before the District Court. Sobhani concedes that, in rendering its decision, the District Court drew from and relied on a 508-page file containing documents pertaining to Sobhani's claim. Sobhani Rep. Br. 1-2; App. 20. The Court described this file as "[t]he Administrative Record," and by all appearances that is what it is. *Id.* But according to Sobhani, "there is no evidence that this is *the* official and complete administrative record of this case"; the record does not establish when the file was submitted to the District Court, or by whom, and it might be incomplete or inaccurate. Sobhani Rep. Br. 1-2.

We decline to address this argument because Sobhani failed to raise it before the District Court. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011) ("Arguments raised for the first time on appeal are deemed waived."). In the proceeding below, the District Court (as well as both parties) treated this file as if it were the bona fide administrative record. Any concern that it is not the genuine article should have been raised then, not for the first time on appeal.

Sobhani's chief contention is that Reliance's denial of his claim for disability benefits was arbitrary and capricious. We disagree. The operative employee benefit plan ("the Plan") promises

2

to "pay a Monthly Benefit if an Insured: (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to us." Supp. App. 30. As relevant here, an insured is "Totally Disabled" if, as a result of injury or sickness, he cannot perform the material duties of his "Regular Occupation" during the so-called elimination period "and for the first 24 months for which a Monthly Benefit is payable." *Id.* at 20. An insured who is "Partially Disabled" — meaning that, as a result of injury or sickness, he can perform the material duties of his regular occupation on a part-time basis or some of those material duties on a full-time basis — is considered "Totally Disabled," except during the elimination period. *Id.* But an insured has a "Residual Disability" if he is "Partially Disabled" during the elimination period, and "Residual Disability will be considered Total Disability." *Id.*

The "Elimination Period" begins on the first day of "Total Disability" and runs for 180 days; with one exception not at issue here, no benefit is payable if the insured does not remain "Totally Disabled" throughout that time. *Id.* at 17, 19. For purposes of determining whether an insured can work "full-time" in his "Regular Occupation," the Plan defines "full-time" as a thirty-hour workweek and looks to the insured's "Regular Occupation" as it is "normally performed in the national economy," not as it is performed for a particular employer. *Id.* at 19, 20.

Reliance did not act arbitrarily and capriciously when it determined that Sobhani was not entitled to disability benefits under these provisions. It concluded that Sobhani's claim failed on two independent grounds: first, that his "medical records [did] not support a Total or Partial Disability"; and second, that he did not meet "the Total or Partial Disability requirements throughout the entire 180-day Elimination Period." *Id.* at 60. Reliance's determination that Sobhani failed to satisfy the requirements of the elimination period, a condition of obtaining benefits, was plainly reasonable.

To secure a favorable benefits determination, Sobhani was required to show that he "completed the Elimination Period," *i.e.*, that as a result of injury or sickness, he was unable to perform the material duties of his regular occupation on a full-time basis for a continuous period of 180 days running from the first day of "total disability." In his administrative proceeding, Sobhani argued that he became "totally disabled" on July 2, 2010. *Id.* at 62. Accordingly, Sobhani could have been eligible for benefits only if at that time and for the next 180 days, he was unable to perform the material duties of his regular occupation on a full-time basis. But Sobhani continued to work full-time — that is, to work thirty-hour weeks — through August 20, 2010. Indeed, in the eight weeks following the asserted onset of disability, he worked for 32, 23, 34, 33, 37, 34.5, 39.5, and 35 hours, *id.* at 255-262, and on July 2, 2010, he told his primary-care physician that he was capable of working between 30 and 32 hours weekly, *id.* at 209. Because Sobhani was able to (and did) work full-time during this period, he could have qualified as "totally disabled" only if, during this time, he was incapable of performing at least some of his material duties as an aircraft engineer. *See id.* at 20 (an insured qualifies as "Partially Disabled" (and thus "Totally Disabled" within the meaning of the Plan) if "an Insured is capable of performing the material duties of his/her Regular Occupation on a

3

part-time basis *or* some of the material duties on a full-time basis" (emphasis added)).  But nothing in the record suggests that was the case.[1]

That Reliance was operating under a conflict of interest because it both evaluates and pays claims does nothing to unsettle this conclusion.  Such a conflict is to be "weighed as a factor in determining whether there is an abuse of discretion," *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (internal quotation marks omitted), but we have "declined to assign any weight to a conflict of interest in the absence of any evidence that the conflict actually affected the administrator's decision," *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 218 (2d Cir. 2015) (internal quotation marks omitted).  Sobhani points out that an "irrational decision or a one-sided decisionmaking process" can indicate that a conflict in fact influenced the administrator.  *Id.*; *see* Sobhani Br. 21.  As explained above, however, Reliance's determination that Sobhani did not satisfy the elimination period was reasonable; and as the District Court observed, Reliance explained its determination in "Appeal Letters [that] reflect a thorough review of the evidence in the Administrative Record."  App. 27.  Accordingly, we have no reason to suppose that Reliance's conflict of interest infected its decision, and no basis on which to disturb its conclusion that Sobhani is not entitled to disability benefits.

## CONCLUSION

We have reviewed all of Sobhani's arguments on appeal and find them to be without merit.  We thus **AFFIRM** the August 15, 2014 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[1] Sobhani also argues that, before concluding that his "medical records [did] not support a Total or Partial Disability," Supp. App. 60, Reliance was obliged to determine whether any American employer "would hire an engineer who [cannot work] 40 hours per week," Sobhani Br. 17.  We understand Sobhani to argue that the ability to work forty hours a week is a material duty of an aircraft engineer, and therefore — notwithstanding the Plan's explicit language stating that an insured is not "disabled" if he can perform all the material duties of his occupation and work thirty hours a week — he qualifies as "disabled" if he cannot work *forty* hours a week, even if he can perform all of his (other) material duties.  Having reviewed the record and Reliance's sensible interpretation of the Plan as applied to Sobhani's circumstances, we disagree.  *See McCauley*, 551 F.3d at 132-33 ("Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." (internal quotation marks omitted)).